**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0395-21

FALLIVENE AGENCY, INC.,

    Plaintiff-Appellant,

v.

BARBARA HILL, Executrix of
the Estate of HARRY EYESTER,

    Defendant-Respondent.

_____

Submitted October 3, 2022 – Decided October 26, 2022

Before Judges Whipple and Marczyk.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-9365-19.

James M. Cutler, attorney for appellant.

Law Offices of Martin J. Jennings, Jr. LLC, attorney for respondent (Martin J. Jennings, Jr., on the brief).

PER CURIAM

    This matter arises from a dispute involving payment of a broker's commission stemming from the sale of a property. Plaintiff, Fallivene

Agency, Inc. (Fallivene), appeals from the August 27, 2021 order granting summary judgment to defendant, Barbara Hill, executrix of the estate of Harry Eyester (Hill). Based on our review of the record and the applicable legal principles, we affirm.

I.

We derive the following from the summary judgment record. In 2016, Hill, in her capacity as executrix, and other owners of adjoining property in Fairfield, entered into a contract to sell certain parcels of land to a developer, BNC. Fallivene, a real estate brokerage firm, served as the broker for this transaction. Hill refused to pay Fallivene a commission from the sale[1] and Fallivene subsequently filed a complaint asserting causes of action for breach of commission, quantum meruit, promissory estoppel, and unjust enrichment.[2]

Central to this dispute is Section 13 of the contract between BNC, Hill, and the other property owners (referred to collectively as "Owner"), which reads in relevant part:

---

[1] The contested commission of $28,248.18 was placed in escrow. The trial court denied a motion to turn over funds filed by Hill and granted a stay pending appeal.

[2] The trial court dismissed Hill's Consumer Fraud Act counterclaim, and that issue is not before us on appeal.

A-0395-21

> Owner represents and warrants to [BNC] that Owner has not dealt with any broker in connection with the transaction contemplated by this Agreement other than Fallivene Agency[,] Inc.[,] Real Estate Broker (the "Broker") who shall be paid 4% of the Purchase Price by Owner. . . .   Owner agrees to pay any fee or commission owing to the Broker pursuant to a separate agreement made by Owner and Broker.

In short, Fallivene relies on the first sentence of this contract provision to support its argument that it is entitled to a 4% commission.  Hill relies on the second sentence for the proposition that any commission owed to Fallivene would be subject to a separate agreement.[3]  Fallivene did not sign the contract and was not a party to the contract.  Moreover, there is no "separate agreement" between Hill and Fallivene for payment of a fee or commission.

II.

Fallivene raises the following points for our consideration:

POINT I

DEFENDANT MAY NOT DISAVOW A COMMISSION OBLIGATION THROUGH A UNILATERAL DECLARATION.

---

[3]   The remaining sellers who were parties to the contract apparently paid Fallivene the 4% commission, although it is unknown whether the other sellers had a separate commission agreement.

A-0395-21

THE TERMS OF THE CONTRACT ARE TOO VAGUE TO DISENTITLE FALLIVENE TO A COMMISSION.

More particularly, Fallivene contends it is entitled a commission based on the contract between Hill and BNC, which is a writing Hill signed acknowledging Fallivene's broker status and the rate of commission, thereby satisfying the statute of frauds pursuant to N.J.S.A. 25:1-16. Fallivene notes N.J.S.A. 25:1-16 does not require an "agreement" between parties in order for a broker to be entitled to a commission. Rather, the statute only requires a "writing" the owner signs, which the broker need not countersign. Fallivene contends Hill had no right to abrogate its entitlement to a commission by imposing an additional requirement of a separate agreement. Fallivene argues it is fundamental that in order to establish a contractual obligation, there must be a common intent. Friedman v. Tappan Dev. Corp., 22 N.J. 523, 531 (1956). Fallivene contends it never manifested an intent to enter into a separate contract. Fallivene further contends the "separate agreement" provision in Section 13 is vague, and it should not be bound by same. Fallivene asserts that while the contract mentions Fallivene, it does not do so in Fallivene's capacity

as a party with rights created by the contract. Rather, it merely memorializes the role Fallivene played and the compensation to which it was entitled.

Hill counters the contract must be read in its entirety, and Fallivene "cherry picks" one clause of Section 13 but fails to meaningfully explain the "separate agreement" provision. Hill notes it is undisputed Fallivene did not provide services to her during the three years between the formation of the contract and closing. Hill submits Fallivene also did not have any contract or listing agreement with Hill and provided no services to Hill with respect to the sale of the estate's interest in the property. Hill argues the language in Section 13, which states the "[o]wner agrees to pay any . . . commission owing to the Broker pursuant to a separate agreement made by Owner and Broker," contemplates each owner of the various parcels would have separate agreements with Fallivene. It is undisputed there is no separate writing, and Hill argues Fallivene has failed to satisfy the statute of frauds so as to create a commission obligation.

The trial court found the contract was unambiguous, the "separate agreement" provision in Section 13 of the contract was clear, and any right to a commission would be dealt with in a separate agreement. The court noted Hill and Fallivene never entered into such an agreement. The court further

indicated, "[t]hus, . . . plaintiff had no legal basis to assert a commission claim . . . because there was no enforceable writing between [Fallivene and Hill] that provides for a commission."

III.

When reviewing the grant of summary judgment, we apply the "same standard as the motion judge." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). That standard mandates that summary judgment be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).

We focus only on the motion record before the judge. Ji v. Palmer, 333 N.J. Super. 451, 463–64 (App. Div. 2000). Like "the trial court[, we] must 'consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Brill

6

v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). We owe no deference to the motion judge's legal analysis or interpretation of a statute. The Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017) (citing Zabilowicz v. Kelsey, 200 N.J. 507, 512 (2009)).

Although we are not addressing a contract between Hill and Fallivene—as the parties concede there was no such contract—we are called upon to interpret the language or "writing"[4] in a contract between Hill and BNC. Specifically, we must address Section 13 of the contract and its corresponding impact on Fallivene's claim of entitlement to a broker's commission. Accordingly, we are guided by well-established principles. "A basic principle of contract interpretation is to read the document as a whole in a fair and common-sense manner." Hardy ex rel. Dowdell v. Abdul–Matin, 198 N.J. 95, 103 (2009) (citing DiProspero v. Penn, 183 N.J. 477, 496-97 (2005)). If we find the terms "are clear and unambiguous, there is no room for construction and the court must enforce those terms as written," in addition to giving them "their plain, ordinary meaning." Watson v. City of E. Orange, 175 N.J. 442, 447 (2003) (Long J., dissenting); Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251,

---

[4] Fallivene argues Section 13 is a "writing" which satisfies the statute of frauds. N.J.S.A. 25:1-16(b). When interpreting a "writing" or contract language, we rely on the same principles discussed above.

270 (2008) (quoting Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001)).

Importantly, "[a] contract 'should not be interpreted to render one of its terms meaningless.'" Porreca v. City of Millville, 419 N.J. Super. 212, 233 (App. Div. 2011) (quoting Cumberland Cty. Improvement Auth. v. GSP Recycling Co., 358 N.J. Super. 484, 497 (App. Div. 2003)).

N.J.S.A. 25:1-16(b) reads as follows:

> [A] real estate broker who acts as agent or broker on behalf of a principal for the transfer of an interest in real estate . . . is entitled to a commission only if before or after the transfer the authority of the broker is given or recognized in a writing signed by the principal or the principal's authorized agent, and the writing states either the amount or the rate of commission.
>
> [N.J.S.A. 25:1-16(b).]

To be entitled to a commission, a broker must strictly comply with the statute of frauds pursuant to N.J.S.A. 25:1-16. Coldwell Banker Com. v. Blancke P.W. LLC, 368 N.J. Super. 382, 392 (App. Div. 2004) (quoting C&J Colonial Realty, Inc. v. Poughkeepsie Sav. Bank, FSB, 355 N.J. Super. 444, 473 (App. Div. 2002)). A broker's entitlement to commission may be described in a contract between the buyer and the seller, and provided the principal signs the contract, this satisfies N.J.S.A. 25:1-16.

The issue before the court is whether the "separate agreement" provision of Section 13 of the contract precludes Fallivene from the 4% commission set forth in the clause. Guided by the principles discussed above, we determine the trial court correctly granted summary judgment in favor of Hill.

We are not persuaded by Fallivene's arguments. Fallivene contends while the contract mentions Fallivene, it is not in its capacity as a party with rights created by the contract, and it merely memorializes the role Fallivene played and the compensation to which it was entitled. Plaintiff cannot rely on selective portions of the contract to establish a "writing" for the purposes of N.J.S.A. 25:1-16 and ignore other language in the same clause addressing the commission issue. More specifically, Fallivene cannot exclusively rely on the language giving it a right to a commission and disregard language in the same clause specifically indicating the owner, Hill, agrees to pay <u>any</u> commission <u>pursuant to a separate agreement</u> made between Hill and the broker (Fallivene). The reference to "any . . . commission" would include the 4% commission language relied upon by Fallivene.

While the clause Fallivene relied upon, standing alone, may ordinarily satisfy the statute of frauds under N.J.S.A. 25:1-16 as a writing, we must read the document as a whole and not overlook the "separate agreement" provision

language. Section 13 by its own terms contemplates a separate agreement, and Hill and Fallivene never reached such an agreement. Fallivene's argument would render the "separate agreement" language meaningless. See Porreca, 419 N.J. Super. at 233. Fallivene's argument that the court should not consider the clause requiring a separate agreement in analyzing the earlier commission provision is unpersuasive. Indeed, doing so would contradict the rule that a contract should be considered in its entirety. See Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014) (noting that courts should read a contract "as a whole in a fair and common sense manner") (internal quotation marks omitted) (quoting Hardy ex rel. Dowdell, 198 N.J. at 103).

Although a broker may be entitled to a commission when there is a writing signed by a seller, even in the absence of an actual separate contract between seller and broker, when the writing indicates the commission is subject to a separate agreement—and there is no separate agreement—the broker has no right to a commission. The trial court, looking at the contract language in its entirety, properly found that the writing relied upon by Fallivene unambiguously required a separate agreement in order for it to be entitled to a commission from Hill. Section 13 of the contract does not, therefore, establish Hill is obligated to pay the commission.

To the extent we have not otherwise addressed plaintiff's arguments, they lack sufficient merit to warrant discussion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11